**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

THE TRAVELERS INDEMNITY COMPANY

v.

MMG INSURANCE COMPANY

Case No. 25-cv-00257-TSM
Opinion No. 2026 DNH 144

**ORDER ON MMG INSURANCE**
**COMPANY'S MOTION TO DISMISS OR REMAND**

Plaintiff, The Travelers Indemnity Company ("Travelers"), filed this diversity action against MMG Insurance Company ("MMG"), seeking a declaratory judgment ruling that MMG is obligated to defend and indemnify Travelers' insured, Millworks Condominium Association, Inc. ("Millworks"), on a primary and non-contributory basis, in an underlying state court action entitled David Rothman v. Millworks Condominium Association, Inc. and R&D Ground Services, LLC. Doc. No. 1. The matter is before the court on MMG's motion to dismiss Travelers' complaint or remand the matter to state court (Doc. No. 15). Therein, MMG seeks a ruling dismissing Travelers' complaint and referring the matter to arbitration pursuant a Special Arbitration Agreement in which Travelers agreed to arbitrate certain disputes with other insurance carriers. See Doc. No. 15 at ¶¶ 3-8, 16-20, 26. Alternatively, MMG seeks dismissal or a remand to an appropriate state court on the grounds that Travelers failed to satisfy the amount in controversy necessary to support diversity jurisdiction. Id. at ¶¶ 21-24, 26. After consideration of Travelers' complaint and the parties' written submissions, and for all the reasons described below, MMG's motion to dismiss is granted.

## LEGAL STANDARD

### I. Standard of Review for MMG's Motion to Dismiss for Lack of Diversity Jurisdiction

MMG moves to dismiss Travelers' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) is "[t]he proper vehicle for challenging a court's subject-matter jurisdiction[,]" including a challenge, such as the one that MMG presents in this case, to the existence of diversity jurisdiction. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). In assessing jurisdiction under Rule 12(b)(1), the court "must take the complaint's well-pleaded facts as true and indulge all reasonable inferences in the pleader's favor[.]" Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). The court may consider materials outside the complaint in order to shed light on the jurisdictional analysis. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002) ("While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion"). Thus, to the extent a jurisdictional challenge places "the accuracy, as opposed to the sufficiency, of the plaintiff's jurisdictional allegation" at issue, the court "must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." Valentin, 254 F.3d at 364.

### II. Standard of Review for MMG's Motion Regarding Arbitration

Although MMG characterizes the portion of its motion invoking the Special Arbitration Agreement as a motion to dismiss under Rule 12(b)(1) or 12(b)(6), see Doc. No. 15-1 at pgs. 3-9, it is more properly construed as a motion to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. See Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 168 (1st Cir. 2022) ("we treat a motion to dismiss based on an arbitration clause as a request to compel arbitration when the facts of the case make it clear that that party intended to invoke

arbitration" (quotations and citations omitted)); Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 172 n.5 (1st Cir. 2021) (treating defendant's "Motion to Dismiss to Compel Arbitration" as "a motion to compel arbitration under the FAA whe[re] "the moving party clearly invoke[d] an arbitration agreement as the basis for its request."). "Except in 'exceptional cases where the parties have foregone the submission of record materials and have relied solely on the pleadings to support or oppose [a] motion [to compel arbitration],' the applicable standard of review is the same as on a motion for summary judgment." Orantes v. DG Retail LLC, No. 23-cv-378-SE, 2023 WL 7335999, at *1 (D.N.H. Nov. 7, 2023) (alterations in original) (quoting Rodríguez-Rivera, 43 F.4th at 168 n.15). In the instant case, MMG submitted documents in support of its motion to compel arbitration, including but not limited to, a Special Arbitration Agreement to which Travelers is a signatory. See Doc. No. 15-1 at pgs. 2-3, 5-9 (citing exhibits). Therefore, the court must apply the summary judgment standard rather than the standard for motions to dismiss. See Rodríguez-Rivera, 43 F.4th at 168 ("courts ordinarily apply the summary-judgment standard – not the motion-to-dismiss standard – to evaluate motions to compel arbitration." (footnote omitted)).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party[.]'" Taite v. Bridgewater State Univ. Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021) (quoting Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018)). "[A] fact is 'material' if it 'has the potential of affecting the outcome of the case[.]'" Id. (quoting Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)).

"Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must 'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue.'" Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (quoting Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)). In evaluating a motion to compel arbitration, the court must construe the record "in the light most favorable to the non-moving party, with all reasonable inferences drawn in its favor." Rodríguez-Rivera, 43 F.4th at 168. However, if the non-moving party "fails to adduce such evidence on which a reasonable factfinder could base a favorable verdict, the motion [to compel arbitration] must be granted. Rosen v. Genesis Healthcare, LLC, No. 20-cv-1059-PB, 2021 WL 411540, at *2 (D.N.H. Feb. 5, 2021).

With these standards in mind, the relevant facts are as follows.

**BACKGROUND**

This case arises out of an incident that took place on the night of March 15, 2023, when David Rothman ("Rothman"), a tenant at the Lofts at Mill West apartment/condominium complex in Manchester, New Hampshire, allegedly slipped on ice and suffered severe injuries while walking from his car to the entrance of the apartment complex in the rear, upper parking lot of the Lofts at Mill West. See Doc. No. 1 at ¶ 9; Doc. No. 15-2 at ¶¶ 8-18. At the time of the incident, Millworks was allegedly responsible for the management, maintenance, and care of the common areas of the Lofts at Mill West, including the parking lot where Rothman slipped and fell. Doc. No. 15-2 at ¶ 3. Plaintiff Travelers, an insurance company organized under the laws of Connecticut

and authorized to issue insurance policies in New Hampshire, was the general liability carrier for Millworks. Doc. No. 1 at ¶ 1; Doc. No. 1-4 at pg. 1.[1]

***Millworks' Contractual Arrangements with R&D Ground Services, LLC***

During the winter of 2023, Millworks had a "Contract for Snow Plowing Season 22-23" (the "Snow Removal Contract") with R&D Ground Services, LLC ("R&D"). See Doc. No. 15-7. Under the terms of the Snow Removal Contract, R&D agreed to provide ice and snow removal services at the Lofts at Mill West. See Doc. No. 15-2 at ¶¶ 4, 25; Doc. No. 15-7 at pgs. 3-4. Defendant MMG, an insurance company organized under the laws of Maine and authorized to issue insurance policies in New Hampshire, provided insurance coverage to R&D under a Special Trade Contractors Policy. Doc. No. 1 at ¶¶ 2, 18; Doc. No. 1-3.

Pursuant to the Snow Removal Contract, R&D agreed to perform "[w]inter snow and ice management" at the Lofts at Mill West, including the pretreatment of lots and walkways, snow plowing of parking lots and entrances, and the clearing of snow and ice "in between vehicles and around cars using industry's best practices." Doc. No. 15-7 at pg. 3. However, the Contract clarified that while "R&D will make a point of trying to clear snow/ice in between vehicles and around cars using industry's best practices[,] R&D take[s] no responsibility for areas around vehicles that don't or can't move." Id. It further emphasized that "[i]n the case of vehicles that don't move[,] R&D will in its routine checks on site try to remove ice and snow by mechanical/chemical means but takes no responsibility for these areas." Id.

The Snow Removal Contract contained an insurance provision that required R&D to procure and maintain insurance coverage that met specified minimum requirements. See id. at

[1] Unless otherwise indicated, citations to page numbers in the supporting documents refer to the court's CM/ECF numbering system at the top right of the documents.

pgs. 16-18. The requirements included coverage for Millworks under R&D's general liability insurance policy as follows:

> Commercial General Liability Insurance MUST name [Millworks] as Additional Insured, including completed operations, on a primary/non-contributory basis, affirmed by endorsement or policy language, and without restriction as to privity of contract. Policy must include contractual liability and broad form property damage liability coverage. Policy must also provide completed operations coverage for at least eight (8) years from the date of the Project's completion.
>
> Full Contractual Liability, Per Project Aggregate Required

| | |
|---|---|
| $2,000,000 | General Aggregate |
| $2,000,000 | Products/Completed Operations Aggregate |
| $1,000,000 | Each Occurrence, Combined Single Limit |
| $1,000,000 | Personal & Advertising Injury |
| $100,000 | Fire Damage |
| $5,000 | Medical Payments |

> [Millworks] requires Additional Insured Status for [Millworks] on [R&D's] General Liability Insurance Policy by Policy Provision or Endorsement using "Additional Insured-Owners, Lessees Or Contractors" Form CG 20 10 (10/10) and "Additional Insured-Owners Lessees or Contractors – Completed Operations" Form CG 2037 (10/01) or its equivalent. A copy of the endorsement should be attached to the certificate. Policy must also include a Waiver of Subrogation in favor of [Millworks]. [Millworks] requires Waiver of Subrogation by Policy Provision or Endorsement using Form CG 24 04 (05/09), or its equivalent.

Id. at pg. 17.

The record shows that R&D did procure and maintain coverage for Millworks under its general liability policy. See Doc. No. 1-3 at pg. 114. Thus, the Special Trade Contractors Policy, under which MMG insured R&D, contained an Endorsement entitled "Additional Insured – Extended Coverage Period – Owners, Lessees or Contractors – With Additional Insured Requirement in Construction Contract." Id. The Endorsement modified the business liability provisions of the Policy to include Additional Insured parties as follows:

> The following is added to Paragraph C. Who Is An Insured in Section II – Liability:
>
> 4. Any person or organization for whom you are performing operations is also an insured if you and such person or organization have agreed in writing in a contract

> or agreement that such person or organization be included as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured. A person's or organization's status as an insured under this paragraph ends when your operations for that insured are completed or the contractor's agreement is terminated unless you have contractually agreed to provide coverage after either completion or termination in which case additional insured status shall continue for the period required by the contract.

Id. (emphasis omitted).

***Travelers' Tender of Rothman's Claim to MMG***

Travelers conducted an investigation of the March 15, 2023 incident and concluded that Rothman sustained injuries "[d]ue to R & D's failure to properly remove ice" from the parking lot at the Lofts at Mill West. See Doc. No. 1-4 at pg. 1. Consequently, on May 9, 2023, Travelers notified MMG that it was tendering Rothman's claim to MMG for handling. Id. In its correspondence, Travelers requested "indemnity, defense, and additional insured status on a primary and non-contributory basis as outlined by the [Snow Removal Contract]. Id.

On January 31, 2024, MMG denied Travelers' demand. Doc. No. 1-5 at pgs. 1, 3. In connection with its denial, MMG argued that under the Snow Removal Contract, R&D had "no responsibility for areas around vehicles that don't or can't move." Id. at pg. 2 (internal quotation marks omitted). It also asserted that because Rothman "slipped and [fell] in an area between vehicles[,]" his injuries did not arise from R&D's acts or omissions. Id. With respect to Travelers' request for additional insured coverage, MMG reasoned that "the additional insured endorsement requires some causal connection between the insured's work and the alleged liability. . . . Since we dispute that the fall arose out of R & D's actions or omissions, the Additional Insured provision is . . . not triggered at this time." Id. at pg. 3. Accordingly, MMG denied Travelers' Tender Demand but reserved the right to reconsider its position "based upon new facts or information, including the filing of a lawsuit." Id.

***The Underlying Action***

On January 10, 2025, Rothman filed a premises liability lawsuit against Millworks and R&D in state superior court (the "Underlying Action"). Doc. No. 15-2. In his complaint, Rothman asserted negligence claims against each of the defendants based upon their alleged breach of their legal obligations to care for and maintain the Lofts at Mill West apartment/condominium complex in a safe and reasonable manner, including their obligations to prevent hazardous snow and ice conditions at the property. See id. at ¶¶ 20-21, 26-27. Rothman also alleged that he suffered severe personal injuries, including an incomplete fracture of the humeral head of the right shoulder, emotional distress, medical expenses, loss of enjoyment of life, pain and suffering, and other pecuniary losses, as a result of defendants' negligence. See id. at ¶¶ 18, 22-23, 29-30. Accordingly, he demanded damages consisting of compensation for medical costs, emotional distress, pain and suffering, inconvenience, loss of enjoyment of life, permanent injury, and future pecuniary losses. Id. at ¶¶ 23, 30. However, Rothman did not quantify any of his losses or demand a specific amount in damages. See id. Consequently, his complaint contained no estimate as to the value of his claims. See generally Doc. No. 15-2.

On January 29, 2025, following service of Rothman's complaint, Travelers notified MMG once again that it was tendering Rothman's claim to MMG for handling and demanded that MMG "provide indemnification, defense, and additional insured status on a primary and non-contributory basis for Millworks under R & D's general liability policy." Doc. No. 1-6 at pg. 1. MMG responded to Travelers' demand by letter dated February 4, 2025. Doc. No. 1-7. Therein, MMG informed Travelers that it was denying its demand for tender based upon MMG's review of Rothman's complaint "and presently known facts." Id. at pg. 1. Thus, MMG continued to maintain that Rothman's fall "did not arise out of any act or omission of R & D" and that MMG was

therefore not responsible for defending or indemnifying Millworks in the Underlying Action. Id. at pg. 2. As a result of the impasse, Travelers provided a defense to Millworks in the Underlying Action while MMG provided a defense to R&D in that case. See Doc. No. 1 at ¶¶ 13-14; Doc. No. 8 at ¶¶ 13-14.

***The Instant Litigation***

Travelers initiated the instant diversity action against MMG by filing a Complaint for Declaratory Relief against MMG in this court on July 10, 2025. Doc. No. 1. Therein, Travelers seeks relief in the form of a declaratory judgment ruling that MMG "is obligated to defend and indemnify Millworks on a primary and non-contributory basis" in the Underlying Action. Id. at pg. 9. It also requests an order directing MMG to "reimburse all attorneys' fees and costs expended by Travelers in its defense of Millworks from May 9, 2023 to the present, in light of MMG's failure to honor its contractual obligations to defend and indemnify Millworks as an additional insured under the [Special Trade Contractors Policy]." Id. MMG denies that Travelers is entitled to declaratory relief or the payment of attorneys' fees and costs. Doc. No. 8 at pg. 6. It also disputes that Millworks is an Additional Insured under the Special Trade Contractors Policy with respect to this case. Id. at pgs. 5-6. Additionally, as described in its Answer to Plaintiff's Complaint for Declaratory Relief, MMG contends that:

> MMG and Travelers are both signatory members of Arbitration Forums Inc. which states that signatory members must forego litigation and arbitrate claim disputes rather than pursue litigation. Arbitration is compulsory in potential concurrent coverage disputes when the parties have policies that provide coverage for the same person, entity, or risk for the same triggering event.

Id. at pg. 6.

***Settlement of the Underlying Action***

In August 2025, soon after Travelers filed this action, the parties entered into a settlement in the Underlying Action. See Doc. No. 15-3. Under the terms of the settlement, Rothman agreed to accept a total payment of $25,000.00 "in full accord and satisfaction of a disputed claim" against Millworks and R&D. Id. at pgs. 1-2. Travelers and MMG each agreed to pay $12,500.00 of the settlement on behalf of their respective insureds. Id. at pg. 1.

Additional factual details relevant to the court's analysis are described below.

**DISCUSSION**

MMG moves to dismiss or remand Travelers' Complaint for Declaratory Relief on two grounds. First, MMG contends that this action must be dismissed because Travelers is a signatory to Arbitration Forums, Inc.'s Special Arbitration Agreement, which requires Travelers to submit the dispute with MMG to arbitration. Doc. No. 15-1 at pgs. 5-9. Second, MMG contends that the matter must be dismissed or remanded for lack of subject matter jurisdiction because Travelers failed to allege sufficient facts to satisfy the amount in controversy requirement for diversity jurisdiction. Id. at pgs. 9-10. Because federal courts are courts of limited jurisdiction, this court's analysis must begin with the question of subject matter jurisdiction. See Hochendoner, 823 F.3d at 730 ("Federal courts are courts of limited jurisdiction and, thus, we must begin by ensuring that we have jurisdiction to reach the questions presented" on appeal). Accordingly, this court turns first to that issue.

**I. Subject Matter Jurisdiction**

Travelers filed this case in federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). See Doc. No. 1 at ¶ 4. Section 1332(a) provides in relevant part as follows:

> [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states . . .

28 U.S.C. § 1332(a)(1). MMG does not dispute that the parties are diverse because they are citizens of different states. Doc. No. 15-1 at pgs. 9-10 ("It is undisputed that diversity of citizenship exists in this matter."). However, MMG argues that this court lacks jurisdiction over the matter because "the amount in controversy does not exceed the sum or value of $75,000.00, exclusive of interest and costs." Id. at pg. 10.

"[T]he party invoking jurisdiction has the burden to show that it is proper." Barrett v. Lombardi, 239 F.3d 23, 30 (1st Cir. 2001). Where the amount in controversy is in dispute, the First Circuit applies the "longstanding test for determining whether a party has met the amount-in-controversy minimum" that the Supreme Court articulated in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938). Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001). Under that test:

> a plaintiff's general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court. Once the damages allegation is challenged, however, the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount. A party may meet this burden by amending the pleadings or by submitting affidavits.

Id. (quotations and citations omitted).

"Courts determine whether a party has met the amount-in-controversy requirement by 'looking to the circumstances at the time the complaint is filed.'" Id. (quoting Coventry Sewage Assoc. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995)). Therefore, the "legal certainty standard does not mean that jurisdiction is ousted because of the eventual 'inability of plaintiff to recover an amount adequate to give the court jurisdiction,' or because 'the complaint discloses the existence of a valid defense to the claim.'" Id. (quoting Coventry Sewage, 71 F.3d at 5). Similarly,

jurisdiction cannot be defeated by "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit[.]"[2] Id. (first alteration in original) (quoting St. Paul, 303 U.S. at 289-90).

In its Complaint for Declaratory Relief, Travelers alleges that "the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00." Doc. No. 1 at ¶ 4. By challenging the amount in controversy, however, MMG shifted to Travelers the burden of showing "with sufficient particularity facts indicating that it is not a legal certainty" that its claim involves less than $75,000.00 in damages. Spielman, 251 F.3d at 5 (quoting Dep't of Recreation and Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)). Yet Travelers took no steps to amend its Complaint to describe the basis for its allegation that the amount in controversy exceeded the statutory minimum. Nor did it file any affidavits supporting the value of its claim. Instead, Travelers argues:

> in each tender that Travelers sent to MMG for coverage, . . . Travelers asked that MMG provide coverage to Millworks in the underlying claim brought by Mr. Rothman for injuries. Plaintiff's request for coverage pertained to all available limits of liability pursuant to [the Special Trade Contractors Policy]. Travelers filed its Complaint with the good-faith allegation that the amount in controversy exceeded the $75,000 threshold under 28 U.S.C. § 1332(a). Indeed, Travelers referenced the [Special Trade Contractors Policy] in dispute and included it as Exhibit D to its Complaint for Declaratory Judgment. In Exhibit D, the limit of

---

[2] In its responses to MMG's First Requests for Admissions, Travelers admitted that the Underlying Action "settled for less than $75,000.00[,]" that "Travelers paid less than $75,000.00 in total legal expenses and indemnity expenses for the [Underlying Action] giving rise to this Declaratory Judgment Action[,]" and that "there is less than $75,000.00 in dispute between MMG and Travelers arising out of the [Underlying Action]." Doc. No. 15-5 at ¶¶ 10-12. MMG relies on these admissions to argue that the amount in controversy requirement has not been met. See Doc. No. 15-1 at pg. 10. However, Travelers made those admissions more than four months after filing its complaint and approximately three months after the parties settled the Underlying Action. See Doc. No. 1; Doc. No. 15-3 at pg. 4; Doc. No. 15-5 at pg. 4. Therefore, Travelers' admissions reflect events that occurred after initiation of the lawsuit. Because "the amount-in-controversy" must be determined "by looking to the circumstances at the time the complaint is filed[,]" this evidence does not support the dismissal of Travelers' claim for declaratory relief. See Spielman, 251 F.3d at 5 (quotations and citation omitted).

> liability for coverage is $1,000,000. Travelers has properly valued its claim for non-monetary judgment at the limit of liability for the [Special Trade Contractors Policy] in dispute, clearly exceeding the $75,000 amount in controversy requirement for diversity jurisdiction.

Doc. No. 17 at pgs. 5-6 (internal citation omitted). In other words, Travelers posits that the amount in controversy in this action should be determined by the face amount of the policy under which Travelers claims it is entitled to relief as an Additional Insured.

Travelers' argument is insufficient to meet its burden of showing that jurisdiction is proper. "Courts have repeatedly held that the value of the matter in controversy is measured . . . by the judgment's pecuniary consequences to those involved in the litigation." Richard C. Young & Co., Ltd. v. Leventhal, D.D.S., M.S., 389 F.3d 1, 3 (1st Cir. 2004). Here, the object of the present litigation is to avoid the costs of defending and indemnifying Millworks with respect to Rothman's claims against it in the Underlying Action. See Doc. No. 1. Therefore, the amount in controversy is not measured by the face value of Special Trade Contractors Policy but by the value of Rothman's claim against Millworks as well as the costs to Travelers of defending the Underlying Action against its insured. See Scottsdale Ins. Co. v. Calhoun Hunting Club & Lounge, 360 F. Supp. 3d 1262, 1265 (M.D. Ala. 2018) (explaining that the amount in controversy in a case in which an insurer seeks a judgment declaring the absence of liability under an insurance policy "includes not only the amount of the claim against the insured for which the insurer may be liable, but also the costs of defending an underlying action against the insured.").

Courts considering the amount in controversy in lawsuits over insurance coverage consistently hold that "unless the validity of the entire policy is at issue, 'the jurisdictional amount in controversy is measured by the value of the underlying claim – not the face amount of the policy.'" Adam v. Hensley, No. 07-338-JL, 2008 WL 2079966, at *6 (D.N.H. May 16, 2008) (quoting 14B Charles Alan Wright et al., Federal Practice and Procedure § 3710, at 264 (3d ed.

1998)); see also Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1357 (11th Cir. 2005) ("Where, as here, there is no controversy involving the face value of the policy, . . . it would make no sense to consider the policy's face value to be the amount in controversy."); Hartford Ins. Grp. v. Lou-Con Inc., 293 F.3d 908, 911 (5th Cir. 2002) (explaining that "the policy limits are controlling in a declaratory action . . . as to the validity of the entire contract between the parties" but "in declaratory judgment cases that involve the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim" (quotations and citations omitted)); Budget Rent-A-Car, Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) ("Because the applicability of [plaintiff's] liability coverage to a particular occurrence is at issue, the amount in controversy is the value of the underlying potential tort action."). In the instant case, Travelers seeks a declaratory judgment relating to coverage for a particular occurrence – i.e., Rothman's slip and fall in the parking lot at the Lofts at Mill West on March 15, 2023. See Doc. No. 1. For purposes of this action, therefore, the amount in controversy must be based upon the value of Rothman's claim against Millworks plus the costs Travelers incurred in defending Millworks in the Underlying Action.

Rothman's complaint in the Underlying Action contains no information regarding the value of his claims against Millworks and R&D. See generally Doc. No. 15-2. It includes no specific monetary demand or any estimate of Rothman's damages. See id. Nor does it include any specific allegations regarding the medical treatment, if any, that Rothman received for his injuries, the nature and extent of Rothman's pain and suffering, or the extent of his emotional distress. See id. Moreover, Travelers presented no facts regarding the value of Rothman's harm or the amount of any attorneys' fees and costs it incurred in connection with its defense of Millworks in the Underlying Action. See generally Doc. No. 1, Doc. No. 17. "[I]t would be 'impermissible

speculation' for a court to hazard a guess on the jurisdictional amount in controversy 'without the benefit of any evidence [on] the value of individual claims.'" Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010) (second alteration in original) (quoting Lowery v. Alabama Power Co., 483 F.3d 1184, 1220 (11th Cir. 2007)). Because Travelers "has . . . failed to carry [its] burden to show that is not a legal certainty that the claim involves less than $75,000[,]" this court lacks subject matter jurisdiction over this action and MMG's motion to dismiss is granted.[3] See Adam, 2008 WL 2079966, at *6.

## II. Arbitration

Even if Travelers had met its burden with respect to the amount in controversy, this court would still dismiss this action in favor of arbitration. It is undisputed that Travelers and MMG are signatories to Arbitration Forums, Inc.'s Special Arbitration Agreement. See Doc. No. 15-1 at pg. 2; Doc. No. 15-5 at ¶ 1; Doc. No. 15-6. Arbitration Forums, Inc. ("Arbitration Forums") is a not-for-profit corporation that provides arbitration services to insurance companies. See Doc. No. 15-8 at pgs. 4-5. Signatory members of Arbitration Forums agree to "forego litigation and arbitrate claim disputes as specified by Article First of the respective Agreement." Id. at pg. 10. They also accept and bind themselves "to all the Agreement's Articles and Rules by signing it." Id.

Article First of the Special Arbitration Agreement provides in relevant part that "[b]y signing this Agreement, the company accepts and binds itself" to the following compulsory provisions:

[3] To the extent MMG requests a remand to state court rather than a dismissal for lack of subject matter jurisdiction, its request is denied. Remands for lack of subject matter jurisdiction pertain to cases that have been removed from state court to federal court. See 28 U.S.C. § 1447(c). Where, as here, diversity jurisdiction is lacking in a case originally filed in federal court, the matter must be dismissed for lack of subject matter jurisdiction. See Hall v. Curran, 599 F.3d 70, 72-73 (1st Cir. 2010) (finding that district court properly dismissed complaint for lack of subject matter jurisdiction where plaintiff failed to satisfy his burden of establishing diversity jurisdiction).

> Upon **settlement*** of a claim or suit, signatory companies must submit any unresolved disputes to Arbitration Forums, Incorporated (herein after referred to as AF) where:
>
> (a) each has issued a policy of casualty insurance covering, or as a self-insured covers, one or more parties asserted to be legally liable for an accident, occurrence, or event out of which a claim or suit arises; or
> (b) each has issued separate policies of property or casualty insurance providing, or as a self-insured provides, concurrent coverage to the same party or parties asserted to cover an accident, occurrence, or event out of which a first or third-party claim or suit for bodily injury or property damage arises (excludes first-party automobile concurrent coverage) . . .
>
> * * *
>
> *In order to facilitate the prompt settlement of the claim or suit at issue, it is strongly recommended that each company contribute equally to the **settlement**. The **settlement** of a case is made without prejudice to any party participating in the **settlement**. The amount of such **settlement** shall not be at issue unless specifically plead by one of the parties to the arbitration proceeding.

Doc. No. 15-6 at pg. 1. MMG contends that Travelers' claim for declaratory relief falls within the scope of Article First, paragraphs (a) and (b) of the Special Arbitration Agreement. See Doc. No. 15-1 at pgs. 5-9. Consequently, it requests that the court dismiss Travelers' complaint and order Plaintiff to submit this matter to arbitration with Arbitration Forums. Id. at pgs. 10-11. Travelers, on the other hand, argues that arbitration is not compulsory because neither paragraph (a) nor paragraph (b) is applicable to the present dispute. Doc. No. 17 at pgs. 2-4. Accordingly, it contends that MMG's motion to compel arbitration must be denied. See id. at pg. 4. For the reasons that follow, this court concludes that Travelers' claim against MMG falls within the scope of the Special Arbitration Agreement's compulsory provisions and must be submitted to arbitration.

A. Standard of Review of Motions to Compel Arbitration

"Enforcement of arbitration agreements in federal court is governed by the [FAA]." Orantes, 2023 WL 7335999, at *2. "The FAA reflects Congress's intent to create a 'liberal federal policy favoring arbitration.'" Air-Con, 21 F.4th at 173 (quoting AT&T Mobility LLC v.

Concepcion, 563 U.S. 333, 346 (2011)). "As part of that liberal policy, the FAA puts arbitration agreements on equal footing with all other contracts, meaning that courts must treat arbitration as a matter of contract and enforce agreements to arbitrate according to their terms." Rodríguez-Rivera, 43 F.4th at 167 (quotations and citations omitted). "Thus, when a party agrees to arbitrate a dispute, the FAA leaves federal courts powerless to address the merits of that dispute. Instead, [courts] must send the parties off, as they agreed, to duke out their dispute in their arbitral forum." Id.

"When deciding a motion to compel arbitration, a court must determine whether '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008) (quoting Bangor Hydro-Electric Co. v. New England Tel. & Tel. Co., 62 F. Supp. 2d 152, 155 (D. Me. 1999)). "Only if all three prongs of the test are satisfied will a motion to compel arbitration be granted." Id. Here, it is undisputed that Travelers entered into a written agreement to arbitrate by signing the Special Arbitration Agreement. See Doc. No. 15-6. Additionally, there can be no question that MMG did not waive its right to arbitration. See Doc. No. 8 at pg. 6; Doc. No. 15-1 at pg. 5. Therefore, the only issue with respect to MMG's motion to compel arbitration is whether the parties' dispute falls within the scope of the Special Arbitration Agreement.

"When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011) (punctuation in original) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Under New Hampshire law, a court's inquiry when interpreting a contract "focuses on the intent of the

contracting parties at the time of the agreement." Found. for Seacoast Health v. HCA Health Servs. of N.H., Inc., 157 N.H. 487, 492 (2008) (quoting R. Zoppo Co. v. City of Dover, 124 N.H. 666, 671 (1984)).

> In the absence of ambiguity, the parties' intent will be determined from the plain meaning of the language used. The words and phrases used by the parties will be assigned their common meaning, and [the court] will ascertain the intended purpose of the contract based upon the meaning that would be given to it by a reasonable person.

Id. (quoting Greenhalgh v. Presstek, 152 N.H. 695, 698 (2005)). Moreover, in determining whether the parties' dispute falls within the scope of an arbitration agreement, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Dialysis Access Ctr., 638 F.3d at 376 (quotations and citation omitted) (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995)). Ultimately, "arbitration will be ordered unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute." IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 450 (1st Cir. 2010) (quotations and citation omitted).

With these principles in mind, this court turns to whether Travelers' claim for a declaratory judgment ruling that "MMG is obligated to defend and indemnify Millworks on a primary and non-contributory basis" in the Underlying Action falls within the scope of Article First of the Special Arbitration Agreement. Because this court concludes that the parties' dispute falls squarely within the scope of Article First, paragraph (a), it is unnecessary to determine whether arbitration is required under paragraph (b) as well.

B. Application of the Standard to the Special Arbitration Agreement

Paragraph (a) of Article First of the Special Arbitration Agreement requires signatory companies, "[u]pon settlement of a claim or suit," to "submit any unresolved disputes" to arbitration where "each has issued a policy of casualty insurance covering . . . one or more parties asserted to be legally liable for an accident, occurrence, or event out of which a claim or suit arises[.]" Doc. No. 15-6 at pg. 1 (footnote omitted). MMG argues that Travelers' claim for declaratory relief falls within the parameters of this provision. See Doc. No. 15-1 at pgs. 6-7. This court agrees that a plain reading of paragraph (a) compels the conclusion that this case must be submitted to arbitration.

The record demonstrates that Travelers and MMG are signatories to the Special Arbitration Agreement and are therefore "signatory companies" that "must submit any unresolved disputes to Arbitration Forums" for arbitration. See Doc. No. 15-1 at pg. 2; Doc. No. 15-5 at ¶ 1; Doc. No. 15-6. It also demonstrates that Travelers issued a "policy of casualty insurance" to Millworks and that MMG issued a "policy of casualty insurance" to R&D. The term "casualty insurance" is defined for purposes of the Special Arbitration Agreement as "[a]n insurance contract that provides indemnity . . . and/or defense to the insured for legal liability arising from an accident, occurrence, or event for which the policy applies, resulting in bodily injury, property damage, personal injury, or advertising injury." Doc. No. 15-8 at pg. 7. Because it is undisputed that Travelers provided a defense to Millworks and that MMG provided a defense to R&D in the Underlying Action, see Doc. No. 1 at ¶¶ 13-14; Doc. No. 8 ¶¶ 13-14, there can be no question that each of the insurers was acting pursuant to a "casualty insurance" policy. Finally, the record shows that Rothman was seeking to hold Millworks and R&D legally liable for an accident or event – i.e., Rothman's slip and fall – out of which the Underlying Action arose. See Doc. No. 15-2. Therefore, the parties'

dispute in this case falls easily within the scope of Article First, paragraph (a) of the Special Arbitration Agreement.

Nevertheless, Travelers maintains that paragraph (a) is inapplicable to the circumstances of this case. Doc. No. 17 at pgs. 2-3. According to Travelers, that provision "is reserved for circumstances where liability is disputed between carriers for their respective insureds" but does not apply to disputes over coverage, such as the present dispute over whether MMG has a duty to defend and indemnify Travelers' insured in the Underlying Action. Id. at pg. 3. In support of its argument, Travelers cites an example from a Reference Guide to Arbitration Forums, Inc.'s Agreements and Rules of a type of dispute that must be arbitrated under paragraph (a) of Article First of the Special Arbitration Agreement. Id. As the Reference Guide explains, one example of a dispute that qualifies for Special Arbitration under paragraph (a) is: "[a] dispute [that] arises when two cars collide and strike a news stand and several pedestrians. The driver's insurers are unable to agree on their respective liability for the injury claims and damage to the news stand." Doc. No. 15-8 at pg. 13. Travelers contends that because its dispute with MMG is dissimilar to this example, paragraph (a) "is inapplicable and does not compel arbitration." Doc. No. 17 at pg. 3.

Travelers' arguments regarding paragraph (a) do not alter this court's conclusion that the present dispute is subject to arbitration. As an initial matter, Travelers' assertion that paragraph (a) is limited to disputes between insurers regarding the liability of their insureds is undermined by the plain language of Article First of the Special Arbitration Agreement. As expressly provided in Article First, "signatory companies must submit unresolved *disputes* to Arbitration Forums" where, *inter alia*, each company "has issued a policy of casualty insurance covering . . . one or more parties asserted to be legally liable for an accident, occurrence, or event out of which a claim

or suit arises[.]" Doc. No. 15-6 at pg. 1 (emphasis added). Nothing in Article First limits arbitration to disputes between insurers over the issue of liability. See id. Instead, the plain language of the provision indicates that any dispute remaining between insurers following a settlement of a claim or suit must be submitted to arbitration if it satisfies the criteria described in one or more of the paragraphs contained in Article First. Furthermore, the Reference Guide does not purport to provide an exhaustive list of disputes that fall within the scope of the Special Arbitration Agreement. Rather, it provides only "[s]ome examples of the types of disputes" that are subject to compulsory arbitration. Doc. No. 15-8 at pg. 13. Accordingly, Travelers' arguments are insufficient to defeat arbitration. Even if the court had jurisdiction over this matter, it would allow MMG's motion to dismiss on the grounds that Travelers' claim for declaratory relief must be resolved by an arbitrator.[4]

## III. MMG's Request for Attorney's Fees and Costs

As part of its motion to dismiss or remand, MMG requests an award of attorneys' fees and costs it incurred in litigating a matter that falls within the plain reading of the Special Arbitration Agreement. See Doc. No. 15 at pg. 6; Doc. No. 15-1 at pg. 9. MMG fails to show that it is entitled to such relief. "Under the well-established 'American Rule,' attorneys' fees are not recoverable by a party unless statutorily or contractually authorized." Mullane v. Chambers, 333 F.3d 322, 337

[4] Section 3 of the FAA provides as follows: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. In this circuit, however, "a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable." Dialysis Access Ctr., 638 F.3d at 372 (quoting Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 71 (1st Cir. 2010). Because this court concludes that Travelers' only claim against MMG is subject to compulsory arbitration, dismissal would be appropriate.

(1st Cir. 2003). MMG points to no statutory or contractual provision that authorizes such an award in this case. See Doc. No. 15 at pg. 6; Doc. No. 15-1 at pg. 9.

Courts do possess "inherent equitable powers to award attorneys' fees against a party that has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Mullane, 333 F.3d at 337-38 (quotations and citations omitted). However, those powers "should be used sparingly and reserved for egregious circumstances." Id. at 338 (quotations and citations omitted). Here, MMG makes no effort to show that Travelers' actions in filing this lawsuit were made in bad faith or were otherwise improper, much less present egregious circumstances. See Doc. No. 15 at pg. 6; Doc. No. 15-1 at pg. 9. Therefore, its request for attorneys' fees and costs is denied.

## CONCLUSION

For all the reasons detailed herein, MMG's Motion to Dismiss or Remand (Doc. No. 15) is granted but its request for attorneys' fees and costs is denied. The clerk shall enter judgment and close this case.

SO ORDERED.

Talesha L. Saint-Marc
United States Magistrate Judge

September 30, 2026

cc: Counsel of record